J-S79041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NASEEM SMITH, | : | |
| | : | |
| Appellant | : | No. 669 MDA 2018 |

Appeal from the Judgment of Sentence September 13, 2017
in the Court of Common Pleas of Lackawanna County
Criminal Division at No(s):  CP-35-CR-0000200-2016

BEFORE:  SHOGAN, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED FEBRUARY 28, 2019**

Naseem Smith ("Smith") appeals from the judgment of sentence imposed after a jury convicted him of aggravated assault – attempted serious bodily injury, firearms not to be carried without a license, terroristic threats, simple assault, recklessly endangering another person, and possession of a firearm by a minor.[1]  We affirm.

The trial court thoroughly set forth the relevant facts and procedural history in its Memorandum accompanying the Order denying Smith's Post-trial Motions, which we incorporate herein by reference.  **See** Trial Court Memorandum and Order, 3/16/18, at 2-8.[2]  In sum, in July 2015, when Smith

_____

[1] **See** 18 Pa.C.S.A. §§ 2702(a)(1), 6106(a)(1), 2706(a)(1), 2701(a)(1), 2705, 6110.1(a).

[2] We note that the trial court conducted a hearing on Smith's Motion to decertify the case from the criminal division to the juvenile system on April 2, 2016 (hereinafter, the "Decertification Hearing"), which the trial court denied.

was a 17-year-old high school student, following an altercation with the victim, Saddiq Fields ("Fields"), Smith and Jamil Harding ("Harding") pursued Fields in a car driven by Harding, whereupon Smith fired a handgun at Fields, narrowly missing him.

Following the entry of the Order denying Smith's Post-trial Motions, Smith filed a timely Notice of Appeal. In response, the trial court ordered him to file a Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal, and Smith timely complied. The trial court then issued a Pa.R.A.P. 1925(a) Opinion.

On appeal, Smith presents the following questions for our review:

A. Whether the decertification court incorrectly found that [Smith] was not amenable to treatment, supervision, or rehabilitation in the juvenile court system and, thus, erroneously denied his Motion for decertification?

B. Whether there was sufficient evidence to sustain the verdicts of aggravated assault – attempted serious bodily injury, simple assault, recklessly endangering another person, terroristic threats, possession of a firearm without a license, and possession of a firearm by a minor?

C. Whether the verdicts of aggravated assault – attempted serious bodily injury, simple assault, recklessly endangering another person, terroristic threats, possession of a firearm without a license, and possession of a firearm by a minor were against the weight of the evidence?

D. Whether the sentencing court impose[d] harsh and unreasonable sentences?

Brief for Appellant at 5 (capitalization omitted).

In his first issue, Smith argues that the trial court abused its discretion in denying his Motion for decertification, where he was a minor at the time of

the commission of the offenses, and the evidence showed that he was amenable to treatment and rehabilitation in the juvenile court system. *See* Brief for Appellant at 33-40.

In its Rule 1925(a) Opinion, the trial court summarized the relevant evidence adduced at the Decertification Hearing, which we incorporate as though fully set forth herein. *See* Supplemental Trial Court Opinion, 7/19/18, at 3-6.

Smith dedicates the majority of his Argument on this issue to his claim that the decertification court erred in the weight it afforded the respective psychological expert testimony presented at the Decertification Hearing by the defense and the Commonwealth. *See* Brief for Appellant at 36-40. Specifically, Smith asserts that the Commonwealth's expert, Steven Samuel, Ph.D. ("Dr. Samuel"), failed to acknowledge the significance of prevailing scientific research on the development of the human brain in adolescents and how it affects impulse control, which was testified to by the defense's expert, forensic psychiatrist Richard Fischbein, M.D. ("Dr. Fischbein"). *Id.* at 36-37. According to Smith, "the decertification court should have accepted Dr. Fischbein'[s] opinion that[,] within a degree of medical certainty[, Smith] was amenable to treatment in the juvenile system." *Id.* at 37-38. Additionally, Smith emphasizes that

> [a]t the time of the [D]ecertification [H]earing, [Smith] had been incarcerated for several months. He has had no misconducts. He was also taking high school classes with good grades. He contends that these facts demonstrated that he would do well in the structure of the juvenile system. He asserts that both

- 3 -

psychiatrists and psychologists would have had extensive time to treat his mental issues behind his impulsivity which gave rise to his behavior.

*Id.* at 38; *see also id.* (asserting that "while in the juvenile system until age 21, [Smith] would undergo important brain development" and "would be able to continue the educational strides made in … prison.").

In its Opinion, the trial court addressed Smith's claim, adeptly set forth the applicable law, and determined that it properly exercised its discretion in denying Smith's Motion to decertify. *See* Supplemental Trial Court Opinion, 7/19/18, at 6-10. We decline Smith's invitation to reweigh the credibility of the respective experts' testimony, and the proper weight to be assigned to it, both of which were in the sole purview of the decertification court. *See Commonwealth v. West*, 937 A.2d 516, 523 (Pa. Super. 2007) (emphasizing that the trier of fact is free to believe all, part or none of the evidence, and this Court may not reweigh the evidence and substitute its judgment for that of the fact finder). As the trial court's cogent analysis is supported by the law and the record, and we discern no abuse of its discretion, we affirm on this basis concerning Smith's first issue. *See* Supplemental Trial Court Opinion, 7/19/18, at 6-10.

In his second issue, Smith asserts that the Commonwealth failed to present sufficient evidence for the jury to convict him, beyond a reasonable doubt, of the above-mentioned crimes. *See* Brief for Appellant at 40-44. Smith urges that there was no conclusive evidence that he was the person who fired the gun at Fields. *Id.* at 41-42. Specifically, Smith alleges that

when Fields had selected a photo of Smith as the shooter from a police photo array, "Fields stated that he could not be one hundred percent sure as to the perpetrator's identity." *Id.* at 41. Smith also emphasizes that the police never recovered the gun. *Id.* Smith asserts that the only eyewitness who had testified to seeing Smith fire the gun, Harding, "had reason to implicate [Smith] as the shooter, [since Harding] did not want to have any exposure as being the shooter." *Id.* at 42. Finally, Smith contends that his convictions of aggravated assault and simple assault cannot stand, since there was no evidence that Fields suffered any bodily injury. *Id.* at 42-43 (pointing out that Fields "walked away from the entire incident[, and] never received medical treatment.").

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Melvin***, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

The Crimes Code provides that a person is guilty of aggravated assault if he or she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1).

The statute concerning firearms not to be carried without a license provides, in relevant part, that "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." ***Id.*** § 6106(a)(1).

A person commits the crime of terroristic threats if the person, *inter alia*, "communicates, either directly or indirectly, a threat to … commit any crime of violence with intent to terrorize another[.]" ***Id.*** § 2706(a)(1).

A person is guilty of simple assault if he or she, *inter alia*, "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" ***Id.*** § 2701(a)(1).

Concerning recklessly endangering another person, the Crimes Code provides as follows: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." ***Id.*** § 2705.

Finally, the statute governing possession of a firearm by a minor provides that, generally, "a person under 18 years of age shall not possess or transport a firearm anywhere in this Commonwealth." *Id.* § 6110.1(a).

In its Opinion, the trial court cogently addressed Smith's sufficiency challenge, set forth the applicable law, and determined that there was ample evidence for the jury to convict Smith of the crimes. *See* Trial Court Memorandum and Order, 3/16/18, at 9-12. We agree with the trial court's analysis and determination, which is supported by the record and the law, and therefore affirm on this basis in rejecting Smith's sufficiency challenge, *see id.*, with the following addendum.

To the extent that Smith challenges his convictions of aggravated assault and simple assault based upon the fact that Fields did not sustain any bodily injury (or serious bodily injury), this claim does not entitle Smith to relief, where the evidence established that he had *attempted* to cause such injury. *See* 18 Pa.C.S.A. § 2702(a)(1) (providing that a person is guilty of aggravated assault if he or she "*attempts to cause* serious bodily injury to another …." (emphasis added)); *id.* § 2701(a)(1) (providing that a person is guilty of simple assault if he or she "*attempts to cause* … bodily injury to another[.]" (emphasis added)).

In his third issue, Smith contends that the jury's verdicts were against the weight of the evidence. *See* Brief for Appellant at 45-46.

Our standard of review of a weight of the evidence claim is as follows:

The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (quotation marks and citations omitted); *see also Commonwealth v. Rabold*, 920 A.2d 857, 860 (Pa. Super. 2007) (stating that "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.") (citation omitted).

Smith argues that his convictions are against the weight of the evidence, where Fields "testified [that] there were two to three individuals who followed him [on the] day [of the shooting, and Fields] did not identify [Smith] as the individual who fired the gun." Brief for Appellant at 46. Smith also challenges the credibility of Harding's trial testimony, asserting that "Harding admitted that he had used alcohol and controlled substances on the day in question[,]" and Harding's "testimony is suspect," due to the charges against Harding. *Id.*

- 8 -

Smith essentially asks us to reassess the credibility of the witnesses and reweigh the testimony and evidence presented at trial. We cannot, and will not, do so. It was for the jury to determine the credibility of the witnesses and the weight to be accorded Harding's testimony that he saw Smith fire a handgun. *See Gonzalez*, *supra*; *see also Commonwealth v. Alicia*, 92 A.3d 753, 761 (Pa. 2014) (stating that "[t]he veracity of a particular witness is a question which must be answered in reliance on the ordinary experiences of life, common knowledge of the natural tendencies of human nature, and observations of the character and demeanor of the witness. As the phenomenon of lying is within the ordinary capacity of jurors to assess, the question of a witness's credibility is reserved exclusively for the jury." (citation omitted)). Accordingly, we conclude that the trial court did not abuse its discretion in rejecting Smith's weight of the evidence contention, and we likewise determine that the jury's verdicts do not shock our collective conscience. *See Commonwealth v. Santiago*, 980 A.2d 659, 664 (Pa. Super. 2009) (holding that trial court did not abuse its discretion in denying weight challenge where appellant asked this Court to reweigh the evidence).

In his final issue, Smith argues that the trial court imposed an unduly excessive aggregate sentence (*i.e.*, 61 to 122 months in prison), where (a) it

ordered the respective sentences to run consecutively;[3] (b) the sentences were at the top end of the standard guidelines ranges; (c) the incident did not result in bodily injury to Fields; and (d) the sentencing court failed to adequately consider mitigating factors.[4] *See* Brief for Appellant at 32-33.

Smith challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. *See Commonwealth v. Hill*, 66 A.3d 359, 363 (Pa. Super. 2013). Rather, where, as here, the appellant has preserved the sentencing challenge for appellate review by raising it at sentencing or in a timely post-sentence motion, the appellant must (1) include in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence, pursuant to Pa.R.A.P. 2119(f); and (2) show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. *Hill*, 66 A.3d at 363-64.

Here, Smith included a Rule 2119(f) Statement in his brief. *See* Brief for Appellant at 32-33. Moreover, his above-mentioned claims present a

---

[3] Specifically, the trial court ordered the sentences imposed for aggravated assault and firearms not to be carried without a license to run consecutively. The court also ordered the sentence imposed for terroristic threats to run consecutively to the aggravated assault sentence. The remaining offenses merged for sentencing purposes.

[4] Smith states that the mitigating factors include "his prior record score of 0; that he was 17 years old at the time of the commission of the crimes; that he suffers from depression[;] and that[,] at the age of 17[,] the areas [of the brain] which control impulsivity are not fully developed …." Brief for Appellant at 33.

substantial question for our review. *See Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (stating that "an excessive sentence claim—in conjunction with an assertion that the [trial] court failed to consider mitigating factors—raises a substantial question.") (citation omitted); *Commonwealth v. Bonner*, 135 A.3d 592, 604 (Pa. Super. 2016) (holding that a claim that appellant's standard-range consecutive sentence was excessive, and the trial court failed to consider appellant's rehabilitative needs, raised a substantial question); *but see also Commonwealth v. Lamonda*, 52 A.3d 365, 372 (Pa. Super. 2012) (*en banc*) (stating that "the imposition of consecutive, rather than concurrent sentences, may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment."). Accordingly, we will address the merits of Smith's claims.

We review discretionary aspects of sentence claims under the following standard: "[S]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006). Moreover, the sentencing court has broad discretion in choosing the range of permissible confinement that best suits a particular defendant and the circumstances surrounding his crime. *Commonwealth v. Walls*, 846 A.2d 152, 154-55 (Pa. Super. 2004). The Sentencing Code sets

forth the considerations a trial court must take into account when formulating

a sentence, providing that

> the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b).

Importantly, the sentencing court in the instant case had the benefit of

a pre-sentence investigation report ("PSI"). It is well established that where

a sentencing court is informed by a PSI, "it is presumed that the court is aware

of all appropriate sentencing factors and considerations, and that where the

court has been so informed, its discretion should not be disturbed."

**Commonwealth v. Ventura**, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citing

**Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988)). In discussing

**Devers**, this Court in **Ventura** explained as follows:

> In imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a [PSI], it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Additionally, the sentencing court must state its reasons for the sentence on the record. The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the [PSI]; thus properly considering and weighing all relevant factors.

**Ventura**, 975 A.2d at 1135 (citation omitted).

Because the sentencing court in the instant case confirmed that it had reviewed Smith's PSI prior to sentencing him, *see* N.T., 9/13/17, at 19 & 25, it is presumed that the court considered all mitigating factors, including Smith's age and other relevant matters. *See Ventura*, *supra*. Moreover, the sentencing court stated as follows in support of its denial of Smith's Motion for reconsideration of sentence:

> As reflected by the sentencing hearing transcript, Smith's PSI report, his juvenile and Lackawanna County Prison records, an evaluation report prepared by Dr. Fischbein in connection with Smith's 2015 [D]ecertification [H]earing, and ten letters of recommendation were reviewed and considered prior to sentencing. (T.P. 9/13/17 at pp. 2-4, 7-9, 19). Before Smith's sentences were imposed, the reasons for those sentences were stated on the record, and expressly included "the underlying circumstances of the offenses," "the nature and gravity of the offenses," Smith's "age at the time" of his offenses and sentencing, "his background," "individual circumstances," and "potential for rehabilitation." (*Id.* at pp. 19-22, 24-25). Based upon Smith's prior record score of zero and the offense gravity scores assigned to each offense, the individual sentences imposed fell within the standard ranges of the Sentencing Guidelines. (*Id.* at pp. 3, 22-24). Additionally, Smith was made "boot camp eligible" at the request of defense counsel and without objection by the Commonwealth. (*Id.* at p. 27).

Trial Court Memorandum and Order, 3/16/18, at 13-14 (footnote omitted). The trial court's foregoing analysis is supported by the record.

Additionally, a review of the sentencing hearing transcript reveals that the court considered in-depth argument by defense counsel concerning, *inter alia*, (1) the appropriateness of concurrent sentences because the separate convictions purportedly arose out of a "single transaction"; (2) the fact that Smith was a minor when he committed the offenses; (3) that, as a minor,

- 13 -

Smith's brain was still developing at the time of the offenses; and (4) Smith's good conduct and educational achievements while in prison. *See* N.T., 9/13/17, at 10-14. Further, the court considered a statement that Smith's mother gave on his behalf. *See id.* at 5-10. Therefore, the record belies Smith's claim that the court failed to consider mitigating factors.

Finally, it was within the sound discretion of the sentencing court to impose consecutive, as opposed to concurrent, sentences. *See Commonwealth v. Johnson*, 961 A.2d 877, 880 (Pa. Super. 2008). We discern no abuse of the sentencing court's discretion, nor do we find the standard-range sentences inappropriately excessive, particularly in light of the seriousness of Smith's actions.[5] *See Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (stating that "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code."). Accordingly, Smith's final issue fails.

Judgment of sentence affirmed.

---

[5] The sentencing court also emphasized that less than a month after the shooting that gave rise to the instant case, Smith committed an attempted armed robbery with a gun (for which he received an aggregate term of probation of five years, to be served consecutively to the sentence in the instant case). *See* N.T., 9/13/17, at 20; *see also* Supplemental Trial Court Opinion, 7/19/18, at 2.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/28/2019

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: OF LACKAWANNA COUNTY

CRIMINAL DIVISION

NO. 16 CR 200

vs.

NASEEM SMITH,

Defendant

## MEMORANDUM AND ORDER

NEALON, J.

Following his convictions for aggravated assault, carrying a firearm without a license, and terroristic threats and his subsequent sentence of 61 months to 122 months incarceration at a state correctional facility, defendant filed post-trial motions seeking a judgment of acquittal based upon the insufficiency of the evidence, a new trial on the ground that the verdict was against the weight of the evidence, and reconsideration of his aggregate sentence. Defendant's motion for judgment of acquittal and motion for a new trial challenge the prosecution's evidence establishing the operability of his firearm and the identification of him as the perpetrator. His motion for reconsideration of sentence contends that his individual circumstances, including his age (17 years) at the time of the attempted shooting and his actions while incarcerated, were not properly considered in imposing consecutive, as opposed to concurrent, sentences for his three convictions.

Although the firearm in question was never discovered, the prosecution introduced eyewitness testimony of two individuals who observed defendant fire the 9 millimeter handgun, with one of those witnesses describing the make, model, and appearance of that firearm. In addition, a 9-millimeter bullet casing was found within feet of the site of the shooting, and a firearm and tool mark examiner opined that the casing had been discharged from a Hi-Point 9-millimeter handgun. The prosecution also presented testimony from two witnesses who identified defendant as the shooter. Consequently, defendant's challenges to the sufficiency and weight of the evidence relative to the operability of the firearm and the identification of defendant are both without merit.

The individual sentences that were imposed for each conviction fell within the standard ranges of the sentencing guidelines, and the decision to have those sentences run consecutively, rather than concurrently, is within the discretion of the sentencing judge and will not be disturbed unless the aggregate sentences are unduly harsh or clearly excessive considering the nature of the crimes and the length of imprisonment. Based upon the gravity of the offenses and defendant's character, age, prior criminal record, personal characteristics, and potential for rehabilitation, the aggregate sentences imposed were not excessive or unduly harsh, and defendant's motion for reconsideration of his sentence will be denied.

## I. FACTUAL BACKGROUND

On July 1, 2015, the 17-year-old defendant, Naseem Smith ("Smith"), was attending summer school classes at Scranton High School that concluded at 12:45 p.m. (Transcript of Proceedings (T.P.) on 6/5/17 at pp. 146, 153-154). Scranton High School

- 2 -

surveillance footage reflects that on that date, Smith was wearing jeans and a dark sweatshirt with the words "Just Do It" depicted on the front. (Id. at pp. 151-152). At approximately 1:00 p.m. on July 1, 2015, Mr. Saddiq Fields ("Fields") was selling marijuana in front of the Turkey Hill mini mart located across the street from Scranton High School. (T.P. 6/6/17 at pp. 23-24, 42).

Upon completing his summer school session, a confrontation between Smith and Fields unfolded at Turkey Hill since Smith was angry at Fields for selling "bad weed" to a friend. (Id. at pp. 25-26, 86-87). As Smith began to remove his jacket, presumably to assault Fields, Fields brandished a box cutter and Smith retreated and left the store premises. (Id. at pp. 26, 90). Once Smith departed the Turkey Hill property, Fields boarded a County of Lackawanna Transit System ("COLTS") bus that was destined for the Valley View Terrace housing complex. (Id. at pp. 27, 87).

Immediately following the Turkey Hill encounter, Smith contacted a friend, Jamil Harding, advised Mr. Harding of his hostile exchange with Fields, and asked Mr. Harding to retrieve him in Mr. Harding's vehicle so that they could follow the COLTS bus to Valley View Terrace. (T.P. 6/5/17 at pp. 63-65). Mr. Harding and his front seat passenger, Jenoshua Curry, collected Smith at the Turkey Hill, drove to Valley View Terrace, and parked at an intersection situated near the entrance to the housing complex. (Id. at pp. 66-68, 71, 89-90). As they were seated in Mr. Harding's vehicle, they observed Fields alight the COLTS bus and Smith exclaimed "that's that nigger right there." (Id. at pp. 72, 78). Smith, Mr. Harding, and Mr. Curry approached Fields who fled once he observed Smith. (Id. at p. 73; T.P. 6/6/17 at pp. 28-29). Smith pursued Fields on foot as he ran toward the Valley View Terrace housing complex. (Id., 6/5/17 at pp. 74, 92-93).

- 3 -

While Smith chased Fields, he repeatedly shouted that he was "going to shoot [Fields] in [his] back." (T.P. 6/6/17 at pp. 29-30, 87-88). Fields ran onto the porch of a Valley View Terrace resident, Donna Parfrey, and began pounding on her front door and window. (T.P. 6/5/17 at pp. 115-117, 126; T.P. 6/6/17 at p. 31). At that point, Smith pointed a firearm at Fields and shouted that he was "going to shoot [Fields]" and "going to air [him] out." (T.P. 6/6/17 at pp. 31-33, 89). Mr. Harding and Mr. Curry arrived at the scene in Mr. Harding's vehicle, and Mr. Harding observed Smith pointing a Hi-Point 9-millimeter handgun at Fields while Fields was positioned on the porch and yelling for someone's attention. (T.P. 6/5/17 at pp. 76-77, 89, 94, 106). Mr. Harding witnessed Smith shriek "I'll shoot him right here," while Ms. Parfrey heard Fields screaming "back off me." (Id. at pp. 77, 117-119).

Mr. Harding shouted at Smith to "get back in the car," and Smith entered the rear seat as the vehicle drove away. (Id. at pp. 77-78, 119, 126; T.P. 6/6/17 at p. 35). Mr. Harding made a u-turn, and as he drove his vehicle past Ms. Parfrey's residence, Smith fired his handgun at Fields. (T.P. 6/5/17 at pp. 78-80, 95, 120-121, 124; T.P. 6/6/17 at pp. 35-38, 88). Although the bullet projectile did not strike Fields, he felt the heat of the bullet as it brushed his pant leg. (T.P. 6/6/17 at pp. 38, 40-41). When Mr. Harding, Mr. Curry, and Smith departed the scene, Smith stated "I think [I] hit him" and Mr. Harding observed Fields limping in the rearview mirror. (T.P. 6/5/17 at pp. 81-82).

Donna Parfrey's granddaughter contacted 911 to report the shooting. (T.P. 6/5/17 at pp. 121-122). The Scranton Police responded and discovered a 9-millimeter bullet casing located 22 feet from the step of Ms. Parfrey's porch, and based upon the analysis conducted by the Pennsylvania State Police firearm and tool mark examiner, Cpl. Joseph

- 4 -

Gober, it was determined that the casing had been discharged from a Hi-Point 9-millimeter hand gun. (T.P.6/6/17 at pp. 47-49, 68-72). The police also obtained videotaped surveillance from the home security system of Ms. Parfrey's neighbor, and Detective Sergeant James Pappas recognized Mr. Harding and Smith in that footage, with Smith wearing the same attire that appeared in the Scranton High School surveillance. (Id. at pp. 82-84, 103). Upon subsequently interviewing Mr. Harding, Detective Pappas learned that Smith was the shooter. (Id. at pp. 92, 95). Additionally, Fields made a positive identification of Smith in a photographic lineup arranged by the Scranton Police Department, although Fields cautioned that he was not "a hundred percent sure." (Id. at pp. 95-98).

The Commonwealth charged Smith with criminal attempt to commit homicide, 18 Pa.C.S. § 2501(a), aggravated assault – attempted serious bodily injury, 18 Pa.C.S. § 2702(a)(1), aggravated assault – attempted bodily injury with a deadly weapon, 18 Pa.C.S. § 2702(a)(4), carrying a firearm without a license, 18 Pa.C.S. § 6106(a)(1), possession of a firearm by a minor, 18 Pa.C.S. § 6110.1(a), terroristic threats, 18 Pa.C.S. § 2706(a)(1), simple assault, 18 Pa.C.S. § 2701(a)(1), and recklessly endangering another person, 18 Pa.C.S. § 2705.[1] (Docket Entry No. 8). Smith filed a Petition for Decertification seeking to have these charges adjudicated in the juvenile justice system, but that request was later denied by Judge Vito P. Geroulo on May 4, 2016. (Docket Entry Nos. 6, 9, 19-22). Smith also filed omnibus pre-trial motions on April 1, 2016, and following a hearing on July 26, 2016, Judge Geroulo issued an Opinion on January 5, 2017, denying those

---

[1] Smith did not possess a permit for any firearm, and inasmuch as he was under the age of 21 years, he was ineligible to obtain such a permit in Pennsylvania. (T.P. 6/6/17 at pp. 13-17).

- 5 -

motions. (Docket Entry Nos. 17-18, 23-24, 28). On May 8, 2017, this case was reassigned to the undersigned "due to the medical unavailability of Judge Vito P. Geroulo," and the trial of this matter was scheduled for June 5, 2017. (Docket Entry No. 31).

During the trial, Mr. Harding and Fields both positively identified Smith as the shooter on July 1, 2015. (T.P. 6/5/17 at p. 86; T.P. 6/6/17 at pp. 41, 88-89). In fact, Mr. Harding stated that Smith texted him on the day following the shooting, and proudly stated "yo, the shooting made the paper." (T.P. 6/5/17 at pp. 82, 96-97). The jury found Smith not guilty of criminal attempt to commit homicide and aggravated assault – attempted bodily injury with a deadly weapon, but guilty of aggravated assault – attempted serious bodily injury, carrying a firearm without a license, possession of a firearm by a minor, terroristic threats, simple assault, and recklessly endangering another person. (T.P. 6/6/17 at pp. 185-186). At the request of the defense, a pre-sentence investigation ("PSI") was ordered and the date of Smith's sentencing was deferred pending the completion of the PSI report.[2] (Id. at pp. 189-191).

On September 13, 2017, Smith was sentenced to 36 months to 72 months incarceration for his aggravated assault conviction, 24 months to 48 months imprisonment for carrying a firearm without a license, and 1 month to 2 months incarceration for his terroristic threats offense. By agreement of the parties, his simple assault and recklessly endangering another person convictions merged with his aggravated assault offense, and

---

[2]On January 23, 2017, Smith pled *nolo contendere* in No. 16 CR 207 to possession of a firearm by a minor, recklessly endangering another person, and resisting arrest in connection with a separate incident that occurred on July 26, 2015. *See* Com. v. Naseem Smith, No. 16 CR 207 (Lacka. Co.). The offenses in No. 16 CR 200 and No. 16 CR 207 were consolidated for a single PSI report. (T.P. 6/6/17 at p. 190).

his conviction for possession of a firearm by a minor merged with the offense of carrying a firearm without a license, as a result of which separate sentences were not imposed for those offenses. (Docket Entry No. 47). The sentences that Smith received for his aggravated assault, carrying a firearm without a license, and terroristic threats convictions fell within the standard ranges of the sentencing guidelines. (Docket Entry No. 46). With regard to his *nolo contendere* pleas in No. 16 CR 207, Smith received cumulative periods of probation totaling 5 years, which probationary sentences likewise fell within the standard ranges of the sentencing guidelines. (No. 16 CR 207 at Docket Entry Nos. 38-40). Consequently, Smith's separate sentences in No. 16 CR 200 and No. 16 CR 207 resulted in aggregate incarceration at a state correctional facility for a minimum period of 61 months to a maximum term of 122 months followed by 5 years of special probation. (Id.).

Smith filed timely post-trial motions comprised of a motion for a judgment of acquittal, a motion for a new trial, and a motion for reconsideration of sentence. (Docket Entry No. 52). In seeking a judgment of acquittal, Smith contends that the evidence identifying him as the shooter and establishing the operability of his firearm was insufficient as a matter of law. (Id. at ¶¶ 5-30). He further asserts that he is entitled to a new trial on the ground that the verdict was against the weight of the evidence. (Id. at ¶¶ 32-40). Additionally, Smith requests that his sentence be reconsidered, despite the fact that his "sentence fell within the standard range of the Pennsylvania Sentencing Guidelines," inasmuch as "concurrent sentences," rather than consecutive sentences, are "in the interests of justice." (Id. at ¶¶ 42-49).

- 7 -

After an Order was issued establishing a briefing schedule and a date certain for oral argument, Smith filed a motion for an extension of time which included a written waiver of the time deadlines set forth in Pa.R.Crim.P. 720(B)(3). (Docket Entry Nos. 55, 61). After that request was granted, oral argument on Smith's post-trial motions was ultimately conducted on January 4, 2018. (Docket Entry No. 63). Smith's post-trial motions are ripe for resolution.

## II.  DISCUSSION

### (A)  MOTION FOR JUDGMENT OF ACQUITTAL: SUFFICIENCY OF THE EVIDENCE

Smith first seeks a judgment of acquittal on the basis that the trial evidence was insufficient as a matter of law to sustain the jury's verdict. "A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." Com. v. Duck, 171 A.3d 830, 835 (Pa. Super. 2017). The standard to be applied in reviewing the sufficiency of the evidence "is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Com. v. Sweitzer, 177 A.3d 253, 257 (Pa. Super. 2017). When "viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence." Com. v. Grays, 167 A.3d 793, 806 (Pa. Super. 2017), *app. denied*, 2018 WL 319345 (Pa. 2018). In applying the sufficiency of the evidence test, the

court "may not weigh the evidence and substitute our judgment for the fact-finder." Com. v. Davison, 2018 WL 466228, at *1 (Pa. Super. 2018); Duck, supra.

Moreover, under this standard of review, "the Commonwealth need not preclude every possibility of innocence." Com. v. Crosley, 2018 WL 1082365, at *4 (Pa. Super. 2018); Sweitzer, supra. "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." Davison, supra; Duck, supra. In addition, the prosecution "may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." Crosley, supra; Duck, supra (quoting Com. v. Graham, 81 A.3d 137, 142 (Pa. Super. 2013)). Finally, the jury "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence." Davison, supra, Sweitzer, supra; Grays, supra.

Smith contends that he is entitled to a judgment of acquittal since the Commonwealth allegedly did not prove that the firearm used by Smith was operational," and "[o]ther than [Scranton High School Principal John] Coyle, the only people who provided in-court identifications of Smith were police officers." (Docket Entry No. 60 at p. 6). In response, the Commonwealth submits that Harding "described the firearm in terms of size, color, and distinctive appearance," and further testified "as to the firearm's operability, including an actual shot and the collection of shell casings." (Docket Entry No. 65 at p. 3). With regard to the identification challenge, the Commonwealth notes that Smith was identified as the shooter by Harding, and argues that "there is no requirement

- 9 -

that the victim [Fields] identify the defendant [Smith] in this case or any case." (Id. at p. 4).

Consistent with Pennsylvania law, the jury was instructed that to convict Smith of the firearm offenses, the evidence had to establish beyond a reasonable doubt that the specific firearm at issue "must be operable, that is, capable of firing a projectile." (T.P. 6/6/17 at pp. 143-144). It is well settled in this Commonwealth that a firearm need not be physically produced in order to prove its operability. *See* Com. v. Bond, 362 Pa. Super. 48, 52, 523 A.2d 768, 770 (1987), *app. denied*, 516 Pa. 612, 531 A.2d 779 (1987); Com. v. Yaple, 238 Pa. Super. 336, 338, 357 A.2d 617, 618 (1976). *Accord* Com. v. Godwin, 2016 WL 2653308, at *3 n.6 (Pa. Super. 2016). Rather, "[a] reasonable fact-finder may, of course, infer operability from an object which looks like, feels like, sounds like, or is like, a firearm...without direct proof of operability. Com. v. Layton, 452 Pa. 495, 498, 307 A.2d 843, 844 (1973); Com. v. Fitzhugh, 360 Pa. Super. 217, 233, 520 A.2d 424, 432 (1987), *app. denied*, 515 Pa. 598, 528 A.2d 955 (1987).

Although the subject firearm was never produced, the Commonwealth presented eyewitness testimony from Harding and Fields that they observed Smith discharge the firearm. Harding also described the make, model, and appearance of the firearm possessed and discharged by Smith. Fields informed the jury how he felt the heat of the bullet projectile as it brushed his pant leg. The police discovered a 9-millimeter bullet casing 22 feet from the step of Ms. Parfrey's porch, and the prosecution presented expert testimony from a firearm and tool mark examiner who concluded that the casing had been discharged from a Hi-Point 9-millimeter handgun such as the firearm that was possessed by Smith. The testimonial and photographic evidence introduced at trial was more than

- 10 -

sufficient to prove the operability of the firearm in question. *See* <u>Bond</u>, supra; <u>Fitzhugh</u>, supra.

As for the defense attack on the identification evidence, the reliability of an identification must be assessed by examining the totality of the circumstances. <u>Com. v. Johnson</u>, 635 Pa. 665, 139 A.3d 1257, 1278 (2016). The factors to be considered when determining the reliability of identification evidence include "the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation." <u>Com. v. Kearney</u>, 92 A.3d 51, 65 (Pa. Super. 2014) (quoting <u>Com. v. Moye</u>, 836 A.2d 973, 976 (Pa. Super. 2003), *app. denied*, 578 Pa. 694, 851 A.2d 142 (2004)). An identification of the defendant by someone other than the victim is sufficient to support a conviction. *See*, *e.g.*, <u>Johnson</u>, 139 A.3d at 1265 (victim's aunt identified defendant in a murder case); <u>Kearney</u>, 92 A.3d at 66 (previous acquaintance of defendant identified him in a carjacking case); <u>Com. v. Armstrong</u>, 74 A.3d 228, 238-239 (Pa. Super. 2013) (defendant identified by resident of house next door to property that was subject to an attempted burglary).

The Commonwealth introduced the testimony of Smith's friend, Harding, who knew Smith well and specifically identified him as the shooter. Harding had considerable opportunity to observe Smith's appearance upon meeting him at the Turkey Hill Mini Mart, transporting him to Valley View Terrace, witnessing Smith fire the handgun at Fields, and transporting him from the crime scene. During the trial, Fields likewise made an in-court identification of Smith as the shooter. Based upon the totality of the

- 11 -

circumstances, the evidence adduced at trial was sufficiently reliable to identify Smith as the perpetrator.

### (B)  MOTION FOR NEW TRIAL:  WEIGHT OF THE EVIDENCE

Smith next requests a new trial on the ground that the verdict was against the weight of the evidence. "The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses." Com. v. Kinney, 157 A.3d 968, 972 n.3 (Pa. Super. 2017), *app. denied*, 170 A.3d 971 (Pa. 2017). "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict, but questions which evidence is to be believed." Com. v. Miller, 172 A.3d 632, 643 (Pa. Super. 2017) (quoting Com. v. Thompson, 106 A.3d 742, 758 (Pa. Super. 2014)).

In conducting a weight of the evidence assessment, the role of the trial court is to determine that notwithstanding all the evidence, "certain facts are so clearly of greater weight that to ignore them, or to give them equal weight will all the facts, is to deny justice." Com. v. Williams, 176 A.3d 298, 312 (Pa. Super. 2017); Com. v. Pal, 43 Pa. D. & C. 5th 454, 494 (Lacka. Co. 2015), *aff'd*, 134 A.3d 496 (Pa. Super. 2015), *app. denied*, 635 Pa. 772, 138 A.3d 3 (2016). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." Com. v. Rodriguez, 174 A.3d 1130, 1140 (Pa. Super. 2017). Rather, for a defendant to prevail on a weight of the evidence challenge, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the

- 12 -

court." Com. v. Miller, 172 A.3d 632, 643 (Pa. Super. 2017); Com. v. Killiany, 2015 WL 5060795, at *6 (Lacka. Co. 2015), aff'd, 154 A.3d 864 (Pa. Super. 2016).

Smith baldy argues that "the jury's verdict went against the weight of the evidence presented at trial." (Docket Entry No. 60 at p. 7). Smith has not identified any facts that are allegedly of greater weight than the facts established by the Commonwealth's evidence. The direct and circumstantial evidence discussed in Section II(A) above was not so ambiguous and uncertain that the jury verdict somehow shocked the conscience of the court. Since Smith has not demonstrated that the guilty verdicts were against the weight of the evidence, his motion for a new trial on that basis will be denied.

### (C) RECONSIDERATION OF SENTENCE

In his final request for relief, Smith seeks to have his sentence reconsidered on the basis that he has been incarcerated since his arrest, that he "earned his high school diploma" while in prison, and that he purportedly has "been a model prisoner." (Docket Entry No. 60 at pp. 7-8). The Commonwealth "opposes this request in that there are no new or different circumstances that were not known at the time of sentencing which warrant reconsideration of the sentence." (Docket Entry No. 65 at p. 4).

As reflected by the sentencing hearing transcript, Smith's PSI report, his juvenile and Lackawanna County Prison records, an evaluation report prepared by Dr. Richard Fischbein in connection with Smith's 2015 decertification hearing, and ten letters of recommendation were reviewed and considered prior to sentencing. (T.P. 9/13/17 at pp. 2-4, 7-9, 19). Before Smith's sentences were imposed, the reasons for those sentences were stated on the record, and expressly included "the underlying circumstances of the

- 13 -

offenses," "the nature and gravity of the offenses," Smith's "age at the time" of his offenses and sentencing, "his background," "individual circumstances," and "potential for rehabilitation."[3] (Id. at pp. 19-22, 24-25). Based upon Smith's prior record score of zero and the offense gravity scores assigned to each offense, the individual sentences imposed fell within the standard ranges of the Sentencing Guidelines. (Id. at pp. 3, 22-24). Additionally, Smith was made "boot camp eligible" at the request of defense counsel and without objection by the Commonwealth. (Id. at p. 27).

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed absent a manifest abuse of that discretion. Com. v. McCarthy, 2018 WL 731615, at *10 (Pa. Super. 2018). To challenge the discretionary aspects of sentencing, a defendant must demonstrate that, *inter alia*, there is a substantial question that the sentence is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b). Com. v. Radecki, 2018 WL 989152, at *21 (Pa. Super. 2018); Com. v. Rush, 162 A.3d 530, 543 (Pa. Super. 2017), *app. denied*, 170 A.3d 1049 (Pa. 2017). "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis," but "exists only when the [defendant] advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing

---

[3] The sentencing judge "is required to consider the particular circumstances of the offense and the character of the defendant" and "should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation" in fashioning a sentence, and if the sentencing judge had the benefit of a PSI report, it is "assume[d] the sentencing court 'was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.'" Com. v. Griffin, 65 A.3d 932, 937 (Pa. Super. 2013) (quoting Com. v. Moury, 992 A.2d 162, 171 (Pa. Super. 2010)), *app. denied*, 621 Pa. 682, 76 A.3d 538 (2013).

- 14 -

process." Com. v. Phillips, 946 A.2d 103, 112 (Pa. Super. 2008), *app. denied*, 600 Pa. 745, 964 A.2d 895 (2009), *cert. denied*, 556 U.S. 1264 (2009)

"[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code," Griffin, supra (quoting Moury, supra), and for that reason, challenges to sentences that fall within the standard range of the sentencing guidelines generally do not raise the requisite "substantial question" warranting review. *See* Com. v. Coss, 695 A.2d 831, 833-834 (Pa. Super. 1997) (defendant's claim that the trial court abused its discretion by sentencing him to the highest sentence possible under the standard range of the sentencing guidelines did not raise a substantial question); Com. v. Postell, 693 A.2d 612, 617 (Pa. Super. 1997) (since defendant's sentence was "well within the standard range of the Sentencing Guidelines," defendant "has not raised a substantial question."), *app. denied*, 550 Pa. 718, 706 A.2d 1212 (1998). Similarly, the decision to impose concurrent or consecutive sentences "does not ordinarily raise a substantial question," and "will present a substantial question in only 'the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.'" Com. v. Caldwell, 117 A.3d 763, 769 (Pa. Super. 2015) (quoting Com. v. Lamonda, 52 A.3d 365, 372 (Pa. Super. 2012), *app. denied*, 621 Pa. 677, 75 A.3d 1281 (2013)), *app. denied*, 633 Pa. 774, 126 A.3d 1282 (2015). However, "a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question." Com. v. Dodge. 77 A.3d 1263, 1270 (Pa. Super. 2013), *app. denied*, 625 Pa. 648, 91 A.3d 161 (2014).

Smith requests "that the Court reconsider its decision to run matters consecutively," since "[g]iven the length of time Smith [has] spent in prison and his

- 15 -

achievements while in prison, allowing him to serve concurrent sentences is in the interests of justice." (Docket Entry No. 52 at ¶¶ 47-49). The sentencing transcript documents that Smith's history of incarceration at the Lackawanna County Prison, as well as the other materials and information contained in the PSI report, were weighed and considered in conjunction with his sentencing. Smith was sentenced within the standard range of the sentencing guidelines, and he has not established that the imposition of consecutive sentences resulted in an aggregate sentence that is unduly harsh or clearly unreasonable under the circumstances. Accordingly, his motion for reconsideration of his sentence will be denied. An appropriate Order follows.

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
                                       : OF LACKAWANNA COUNTY

                                         : CRIMINAL DIVISION

                                         : NO. 16 CR 200

            vs.                             :

NASEEM SMITH,                   :

           Defendant            :

## ORDER

AND NOW, this 16th day of March, 2018, upon consideration of "Defendant's Post-Trial Motions," the memoranda of law submitted by the parties, and the oral argument of counsel, and based upon the reasoning set forth in the foregoing Memorandum, it is hereby ORDERED and DECREED that:

1.     Defendant's Post-Trial Motions are DENIED; and

2.     Pursuant to Pa.R.Crim.P. 720(B)(4), defendant is advised in writing of his rights (a) to appeal the denial of his post-sentence motions to the Superior Court of Pennsylvania within thirty (30) days of the filing of this Order, (b) to the assistance of counsel in the preparation of his appeal, and (c) to appeal *in forma pauperis* and to proceed with assigned counsel as provided in Pa.R.Crim.P. 122.

                                        BY THE COURT:

                                        _____ J.

                                         Terrence R. Nealon

- 17 -

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
                                      : OF LACKAWANNA COUNTY

                                      : CRIMINAL DIVISION

                                      : NO. 16 CR 200

        vs.                              :

NASEEM SMITH,                       :

        Defendant               :

                                          :

## SUPPLEMENTAL OPINION PURSUANT TO Pa. R.A.P. 1925(a)

The fifth issue identified in "Defendant's Concise Statement of Matters Complained of on Appeal," which was filed on June 1, 2018, concerns a pre-trial ruling that was made by another judge on May 4, 2016. (Docket Entry No. 74). Since the reasons for that pre-trial ruling "do not already appear of record," this Supplemental Opinion in Support of Order is submitted pursuant to Pa.R.A.P. 1925(a)(1).

## I. PROCEDURAL HISTORY

On August 12, 2015, the Commonwealth charged defendant, Naseem Smith ("Smith"), with criminal attempt to commit homicide, 18 Pa.C.S. § 2501(a), aggravated assault – attempted serious bodily injury, 18 Pa.C.S. § 2702(a)(1), aggravated assault – attempted bodily injury with a deadly weapon, 18 Pa.C.S. § 2702(a)(4), carrying a firearm without a license, 18 Pa.C.S. § 6106(a)(1), possession of a firearm by a minor, 18 Pa.C.S. § 6110.1(a), terroristic threats, 18 Pa.C.S. § 2706(a)(1), simple assault, 18 Pa.C.S. §

2701(a)(1), and recklessly endangering another person, 18 Pa.C.S. § 2705. (Docket Entry No. 1 at pp. 6-13). On February 24, 2016, Smith filed a Petition for Decertification seeking to have these charges adjudicated in the juvenile system, and following a hearing on April 12, 2016, that request was denied by Judge Vito P. Geroulo on May 4, 2016. (Docket Entry Nos. 6, 9, 19-22). Although Judge Geroulo's Order of May 4, 2016, states that an "Opinion consistent with this Order will hereby follow," no such Opinion was ever filed. (Docket Entry No. 22).

On May 8, 2017, this case was reassigned to the undersigned, and the trial of this matter was scheduled for June 5, 2017. (Docket Entry No. 31). On June 6, 2017, the jury found Smith not guilty of criminal attempt to commit homicide and aggravated assault – attempted bodily injury with a deadly weapon, but guilty of aggravated assault – attempted bodily injury, carrying a firearm without a license, possession of a firearm by a minor, terroristic threats, simple assault, and recklessly endangering another person. (T.P. 6/6/17 at pp. 185-186). Following the completion of a pre-sentence investigation report, Smith was sentenced on September 13, 2017, to an aggregate period of incarceration at a state correctional facility for a minimum period of 61 months to a maximum term of 122 months based upon his convictions for aggravated assault, carrying a firearm without a license, and terroristic threats, with his other convictions merging with those offenses for sentencing purposes. (Docket Entry Nos. 46-47). With respect to his *nolo contendere* pleas in No. 16 CR 207, Smith received cumulative periods of probation totaling 5 years that were ordered to be served consecutively to his sentences in No. 16 CR 200. (No. 16 CR 207 at Docket Entry Nos. 38-40).

- 2 -

Smith filed timely post-trial motions comprised of a motion for a judgment of acquittal, a motion for a new trial, and a motion for reconsideration of sentence. (No. 16 CR 200 at Docket Entry No. 52). By Memorandum and Order dated March 16, 2018, Smith's post-trial motions were denied. *See* Com. v. Smith, 2018 WL 1364299 (Lacka. Co. 2018). On April 13, 2018, Smith filed a timely notice of appeal to the Superior Court of Pennsylvania. (Docket Entry No. 69).

Smith was directed to file a statement of errors complained of on appeal under Pa.R.A.P. 1925(b), and thereafter filed his statement of issues on June 1, 2018. (Docket Entry Nos. 73-74). The first four issues raised in "Defendant's Concise Statement of Matters Complained of on Appeal" were addressed in the Memorandum and Order filed on March 16, 2018. (Docket Entry Nos. 66, 74). However, Smith's fifth issue reads:

> Whether the trial court erred when it denied the Defendant's Petition for Decertification especially in light of Defendant's expert, Dr. Fischbein's report and testimony that the Defendant can be rehabilitated prior to the expiration of the juvenile court's jurisdiction?

(Docket Entry No. 74 at pp. 1-2). Since the current record does not reflect Judge Geroulo's reasons for denying Smith's Petition for Decertification, this Supplemental Opinion is submitted in accordance with Pa.R.A.P. 1925(a).

## II. FACTUAL BACKGROUND

During the decertification hearing on April 12, 2016, Smith presented the testimony of a Lackawanna County prison counselor, Kate Grebb, the Deacon at Shiloh Baptist Church, Charles Coe, and a forensic psychiatrist, Dr. Richard Fischbein. (Transcript of Proceedings of Decertification Hearing ("T.P.") on 4/12/16 at pp. 9-74). The Commonwealth introduced into evidence the preliminary hearing transcript dated

January 27, 2016, and Smith's records and transcripts from the Scranton School District. (Id. at pp. 3-5). In addition, the Commonwealth offered the testimony of a licensed psychologist, Dr. Steven Samuel. (Id. at pp. 74-113).

Ms. Grebb testified that from the date that Smith was admitted to the Lackawanna County Prison on July 28, 2015, until the time of the decertification hearing on April 12, 2016, Smith had no reported "misconducts." (Id. at pp. 10-11). She also indicated that Smith was participating in high school classes offered at the prison by the Scranton School District and was attaining academic grades in the 80s. (Id. at p. 11). Deacon Coe stated that Smith had attended the Shiloh Baptist Church with his grandparents and had even participated in its junior deacon program, but stopped attending church services in 2013 following the death of his grandfather and the relocation of his grandmother. (Id. at pp. 15-16). He further testified that the Shiloh Baptist Church "would try to guide [Smith] and...get him back into church" once he is released from incarceration or confinement. (Id. at pp. 17-18). Dr. Fischbein opined "that taking into consideration Section 6322 [of the Juvenile Act] and the criteria that needs to be addressed, to look at the appropriateness of decertification, it was [his] opinion that [Smith] would benefit from being in the juvenile system." (Id. at p. 45).

Based upon his interview of Smith, the results of his adolescent psychological testing, and his clinical observations of Smith, Dr. Samuel testified that Smith did not suffer from any depressive condition or other type of psychological disorder that required treatment. (Id. at pp. 86-92). With respect to the amenability factors set forth in Section 6355(a)(4)(iii) of the Juvenile Act, 42 Pa.C.S., Dr. Samuel agreed with Dr. Fischbein that the impact of Smith's offenses on the victim and the community "was significant" and "of

- 4 -

a concern," that the threat to the safety of the public was "high" and "significant" in that it involved the discharge of a loaded firearm, and that Smith's degree of culpability was reflected by the fact that "Smith was aware of what he was doing," had "calculated his actions," and was "clearly responsible for those actions." (Id. at pp. 96-97). Dr. Samuel concluded that Smith was a "high risk" for further "involvement in criminal behavior" since his testing demonstrated a lack of remorse, his school records established "an ongoing pattern of misconduct," he had neglected to respond to other available rehabilitative "programs in the past," and his actions indicated "predatorial-like behavior" rather than "impulsivity." (Id. at pp. 97-101). Consequently, based upon the amenability factors in Section 6355 and the results of Dr. Samuel's interview, testing, and analysis of Smith, Dr. Samuel concluded within a reasonable degree of psychological certainty that Smith was not amenable to treatment, supervision, or rehabilitation within the juvenile court system. (Id. at p. 104).

At the conclusion of the decertification hearing, Judge Geroulo afforded the parties 10 days within which to submit post-hearing briefs. (Id. at pp. 113-114). Relying upon Dr. Fischbein's testimony, Smith asserted in his post-hearing brief that he suffered from a depressive disorder which caused impulsivity that contributed to his commission of the alleged offenses, and that the juvenile court system would offer better "therapy and if needed, medication" that would enable him to "learn to cope with his impulsivity" and "overcome his depression." (Docket Entry No. 21 at pp. 6-7, 14). The Commonwealth countered that the decertification hearing evidence, including the testimony of Dr. Samuel, established that Smith was not amenable to treatment or rehabilitation within the juvenile system, and that the dispositional alternatives available in the criminal justice

- 5 -

system were adequate for Smith. (Docket Entry No. 20 at pp. 13-18). As stated above, Judge Geroulo denied Smith's petition for decertification by Order dated May 4, 2016. (Docket Entry No. 22).

## III. DISCUSSION

### (A) STANDARD OF REVIEW

Although "most crimes involving juveniles are tried in the juvenile court of the Court of Common Pleas," certain crimes have been deemed "so heinous that they are excluded from the definition of 'a delinquent act'" under Section 6302 of the Juvenile Act, 42 Pa.C.S. § 6302. Com. v. Thomas, 67 A.3d 838, 841-842 (Pa. Super. 2013), app. denied, 625 Pa. 636, 89 A.3d 661 (2014). Pursuant to 42 Pa.C.S. § 6322(a) and Section 6355(e), "when a juvenile has been charged with a crime listed under paragraph 2(ii) or (iii) of the definition of 'delinquent act' in 42 Pa.C.S. § 6302, the criminal division of the Court of Common Pleas is vested with jurisdiction."[1] Com. v. L.P., 137 A.3d 629, 635 (Pa. Super. 2016) (quoting Com. v. Ruffin, 10 A.3d 336, 338 (Pa. Super. 2010)). Under paragraph 2(ii)(C) and (I), if the defendant was 15 years of age or older at the time of the offense "and a deadly weapon as defined in 18 Pa.C.S. § 2301 (relating to definitions) was used during the commission of the offense which, if committed by an adult, would be classified as…[a]ggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) or (2)," or an attempt to commit that offense or the crime of murder as provided in 18 Pa.C.S. § 901, the

---

[1] Section 6322(a) of the Juvenile Act provides that a criminal proceeding in which the defendant is a child shall be assigned to the juvenile system unless "the child is charged with…any of the offenses excluded by paragraph (2)(ii) or (iii) of the definition of 'delinquent act' in Section 6302 (relating to definitions)…." 42 Pa.C.S. § 6322(a). Similarly, Section 6355(e) states that where the petition alleging delinquency involves conduct which, if proven, would constitute "any of the offenses excluded by paragraph 2(ii) or (iii) of the definition of 'delinquent act' in Section 6302 (relating to definitions), the court shall require the offense to be prosecuted under the criminal law and procedures…." 42 Pa.C.S. § 6355(e).

- 6 -

criminal division is vested with jurisdiction. *See* 42 Pa.C.S. § 6302. Since Smith was 17 years of age at the time of the shooting and was charged with criminal attempt to commit homicide and two counts of aggravated assault involving the use of a deadly weapon, the criminal division of the Court of Common Pleas of Lackawanna County was vested with jurisdiction when Smith was first charged in this case.

However, when jurisdiction vests with the criminal division under Section 6302, the juvenile may seek a transfer to the juvenile system through the process of "decertification." Thomas, 67 A.3d at 842; Ruffin, 10 A.3d at 338. The ultimate decision of whether to certify a minor to stand trial as an adult is within the sole discretion of the decertification court. L.P., 137 A.3d at 636; Com. v. Spotti, 94 A.3d 367, 370 (Pa. Super. 2014) (*en banc*), *app. dismissed*, 635 Pa. 151, 132 A.3d 972 (2016). "Decisions of whether to grant decertification will not be overturned absent a gross abuse of discretion." L.P., 137 A.3d at 635; Ruffin, 10 A.3d at 338. "An abuse of discretion is not merely an error of judgment but involves the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment based upon partiality, prejudice, or ill will." Thomas, 67 A.3d at 843 (quoting Com. v. Brown, 26 A.3d 485, 493 (Pa. Super. 2011)). Moreover, "[t]he existence of facts in the record that would support a contrary result does not demonstrate an abuse of discretion." Spotti, 94 A.3d at 370 (quoting Com. v. In re E.F., 606 Pa. 73, 995 A.2d 326, 329 (2010)).

### (B) DECERTIFICATION CRITERIA

"To obtain decertification, it is the juvenile's burden to prove, by a preponderance of the evidence, that transfer to the juvenile court system best serves the public interest." Thomas, 67 A.3d at 842 (citing 42 Pa.C.S. § 6322(a)). "In determining whether the child

has so established that the transfer will serve the public interest, the court shall consider the factors contained in Section 6355(a)(4)(iii) (relating to transfer to criminal proceedings)." 42 Pa.C.S. § 6322(a). Those statutory factors are as follows:

(A)    the impact of the offense on the victim or victims;

(B)    the impact of the offense on the community;

(C)    the threat to the safety of the public or any individual posed by the child;

(D)    the nature and circumstances of the offense allegedly committed by the child;

(E)    the degree of the child's culpability;

(F)    the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

(G)    whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

(I)    age;
(II)    mental capacity;
(III)    maturity;
(IV)    the degree of criminal sophistication exhibited by the child;
(V)    previous records, if any;
(VI)    the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;
(VII)    whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;
(VIII)    probation or institutional reports, if any;
(IX)    any other relevant factors.

42 Pa.C.S. § 6355(a)(4)(iii).

Although the Juvenile Act requires the decertification court to consider all of the amenability factors, it is silent as to the weight that should be assessed to each factor. Com. v. Jackson, 555 Pa. 37, 45, 722 A.2d 1030, 1033 (1999); Thomas, 67 A.3d at 842. Furthermore, the decertification court "need not address, *seriatim*, the applicability and

- 8 -

is respectfully submitted that the Order of Judge Geroulo dated May 4, 2016, denying

Smith's petition for decertification should be affirmed on appeal.

BY THE COURT:

Terrence R. Nealon

Date: JULY 19, 2018

cc:     *Written notice of the entry of the foregoing Supplemental Opinion Pursuant to Pa.R.A.P. 1925(a) has been provided to each party pursuant to Pa. R. Crim. P. 114(B)(3)(vi) by transmitting time- stamped copies via electronic mail to:*

Ruth Lenahan, Esquire                          lenahanr@lackawannacounty.org
Assistant District Attorney
Lackawanna County District Attorney's Office
        Counsel for the Commonwealth

Donna M. DeVita, Esquire                       ddevitalaw@gmail.com
Assistant Public Defender

- 10 -